EARL B. SPENCER, Trustee,

*v.*

THE WORLD'S COLUMBIAN EXPOSITION.

*Filed at Ottawa November 9, 1896.*

1. RECEIVERS —*election by receiver as to performance of insolvent's contracts.* A receiver has the right, subject to the order of the court, to elect whether or not he will perform his insolvent's executory contracts, and he is entitled to a reasonable time within which to make such election.

2. SAME—*receiver's election to accept lease may be implied from his acts.* A receiver's acceptance of the lease of his insolvent may be implied from his unequivocal acts, inconsistent with the landlord's right of re-entry, indicating his intention to adopt the lease and conform to its conditions.

3. SAME—*receiver cannot take benefits of a contract and repudiate its obligations.* If a receiver, by the consent of creditors and by order of court, elects to perform his insolvent's executory contract, and receives the benefits therefrom during the term of the contract, equity will not afterward permit him to say that he did not assume the obligation to pay the contract price.

4. LANDLORD AND TENANT—*receiver cannot accept benefits of lease and settle on basis of quantum meruit.* If a receiver takes possession of his insolvent's leasehold estate and occupies the premises, conducting the former business until the lease expires, he must, in the absence of notice or agreement to the contrary, pay the stipulated rent, though the lessor did not formally put the receiver to his election.

5. EQUITY—*when cause need not be referred to master.* Where rent stipulated in an insolvent's lease is by acts made binding upon his receiver, no reference need be made to a master to ascertain the reasonable rental of the premises.

*Spencer* v. *World's Columbian Exposition*, 58 Ill. App. 637, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

The World's Columbian Exposition, as first party, and John S. Morris, as second party, entered into a written

contract of date March 16, 1892, which, so far as material to this controversy, was as follows:

"That the said party of the first part, (the World's Columbian Exposition,) for and in consideration of the promises and agreements of the said party of the second part, (John S. Morris,) hereinafter set forth, hereby promises and agrees that it will, and it hereby does, set apart for the exclusive use of the party of the second part, from the first day of May, 1892, until forty-five days after the close of the World's Columbian Exposition, the following described tract or parcel of land in Jackson Park, in the city of Chicago, Illinois, to-wit: (describing a parcel of land within the Exposition grounds). Said party of the first part further promises and agrees that it will permit said party of the second part to erect and maintain on said tract certain buildings, structures and appurtenances, and to use the same for the purposes of this contract, and to charge persons who do not hold a ticket for clam-bake and other food, for admission to said tract, not exceeding ten cents, if, in the opinion of the chief of construction, the same is necessary for the protection of the said party of the second part from crowds or disorder, provided that if the said holder of an admission ticket, only, should, after admission, purchase anything, the said admission fee shall be credited upon the charge for said purchase. The said party of the first part promises and agrees that it will conduct its water, sewerage and steam, gas and electric light system to said tract, so as to enable said party of the second part to make the necessary connections therewith, and will allow the use of said systems and of the cold storage system on the same basis as given to others holding similar rights. Said party of the first part also promises and agrees that it will permit said party of the second part to conduct on said tract what is known as 'The New England Clam Bake,' and to charge for a clam bake complete, in season, not exceeding one dollar. (Then follow numerous details

concerning the business to be carried on, etc.)   The said party of the first part further promises and agrees that it will permit said party of the second part to post, without and within said building, such advertising signs relating to its own business as may be approved by the said chief of construction of said party of the first part.

"Said party of the second part, for and in consideration of the promises and agreements hereinbefore set forth, promises and agrees that he will erect and maintain on said tract all buildings and appurtenances, with their equipment, called for by this contract, and supply them with everything necessary for the purpose of carrying out the same.   *   *   *   The said party of the second part promises and agrees that he will erect all said structures, and supply them with everything called for in this contract, and conduct the business therein at his own expense; and it is understood by and between the parties hereto, that said party of the first part is not to be liable for any indebtedness incurred by said party of the second part in and about the matters and things hereinbefore provided for.   *   *   *   Said party of the second part promises and agrees that he will faithfully account for and pay over to the said party of the first part twenty-five per cent of all his gross receipts under this contract, settlements to be had and payments to be made each day for the previous day's business, at such times as shall be designated by the party of the first part.   Said party of the second part promises and agrees that the methods of issuing and selling tickets, and collecting admission and of tickets, and of arriving at the amount of gross receipts of the said party of the second part hereunder, shall be such as are approved by said party of the first part, which may prescribe the same, should it so elect.   Said party of the second part also promises and agrees that he will keep full and true accounts of all the herein mentioned receipts, and that said account shall be open to inspection

by said party of the first part, through its officers or agents, at any time during business hours.  *  *  *

"It is understood by and between the parties hereto, that a corporation may be organized, to which corporation this contract may be assigned, and which corporation, upon accepting said agreement, will succeed to all the rights and privileges and assume all the obligations of the said party of the second part hereunder, but said party of the second part shall not be released from said obligations, and that this contract, nor any part thereof, shall not be otherwise assigned, transferred, sub-let or disposed of, and any other assignment, transfer, subletting or disposition thereof shall be void."

Early in May, 1893, the New England Clam Bake Company was incorporated, and acquired the clam-bake concession and contract from Morris by assignment. For the purpose of raising money to carry on its business it made two trust deeds upon its property then owned and afterward to be acquired, to appellant, as trustee, to secure $100,000 of its bonds. This company carried on the business under the contract until August 8, 1893, when appellant took possession, under a provision in the trust deeds, of all the property and effects of the company and retained possession until the next day, when the Equitable Trust Company was appointed receiver and took possession, the said trustee consenting thereto, under a bill in chancery filed by certain judgment creditors of the clam bake company. The order appointing said receiver provided, among other things, as follows:  "It is ordered that the Equitable Trust Company be and it is hereby appointed receiver of all the property and assets of the said New England Clam Bake Company, with the usual powers of receivers in such cases, and that said receiver proceed at once to take possession of all the property of said company and re-open its said restaurant at the World's Fair, and continue, until further order of court, to conduct the business thereof as near as may be in the

manner in which it has heretofore been conducted, and for that purpose to make such purchases and employ such help as may seem needful.   *   *   *   It is further ordered that said Spencer do forthwith deliver up to said receiver the possession of said restaurant, and of all other property of said company held by him under said mortgages or trust deeds, without prejudice to any rights he may have by virtue of such possession, but all his rights shall be preserved to the same extent as if he had retained his said possession."

The receiver carried on the business and retained possession of the property thus acquired until the close of the exposition, in the fall of 1893, and had so acquired, as the gross receipts from the business, $57,974.95.   Appellee claimed twenty-five per cent, or $14,493.74, of these gross receipts under said contract, and filed its intervening petition in the said cause in the circuit court wherein said receiver was appointed, for an order directing the receiver to pay to it said amount.   The order was made as prayed for, and has been affirmed on appeal to the Appellate Court, and appellant now prosecutes this appeal to reverse that order.

WILLITS, CASE & ODELL, for appellant:

A promise to pay a sum of money out of a fund when collected cannot be construed into an assignment of a part of the fund, and constitutes no lien thereon.   *Wyman* v. *Snyder*, 112 Ill. 99; *Story* v. *Hull*, 143 id. 506; *Bromwell* v. *Turner*, 37 Ill. App. 561; *Christmas* v. *Russell*, 14 Wall. 69; *Rogers* v. *Hosack*, 18 Wend. 319; *Stewart* v. *Hopkins*, 30 Ohio St. 502.

Receivers of a railway system do not, by the mere act of taking possession of a leased road, become assignees of the lease, but they have a reasonable time in which to elect whether to adopt the lease or not.   *Ames* v. *Railroad Co.* 60 Fed. Rep. 968; *Central Trust Co.* v. *Railroad Co.* 23 id. 863; 34 id. 259; *Railroad Co.* v. *Humphreys*, 145 U. S. 82;

*Trust Co.* v. *Railroad Co.* 58 Fed. Rep. 257; *Park* v. *Railroad Co.* 57 id. 799; *Railroad Co.* v. *Railroad Co.* 58 id. 268; *Miltenberger* v. *Railway Co.* 106 U. S. 286; *Railroad Co.* v. *Humphrey,* 145 id. 105; *Trust Co.* v. *Railway Co.* 150 id. 287.

The doctrine that the lessor is not entitled to the reserved rents, but only to the reasonable value of the premises, until the court has been put to its election, is not confined in its application to railway leases. Several similar cases arose under the Bankrupt act. *In re Metz,* 6 Ben. 571; *In re Hamburgher,* 12 Nat. Bank Reg. 277; *In re Lynch,* 7 Ben. 26.

To permit appellee to set off the liability of the corporation against its own independent liability upon its covenants would be to give appellee an unlawful preference over other creditors. *Express Co.* v. *Railroad Co.* 99 U. S. 191; *Ellis* v. *Railroad Co.* 107 Mass. 1.

WALKER & EDDY, for appellee:

Where receivers elect to retain possession of property, real or personal, held under a contract of lease, they become liable, whether as equitable assignees of the lease or by virtue solely of such election, for the stipulated rent during the period of their possession. High on Receivers, sec. 273.

Many authorities for this proposition might be cited, but the following will serve as illustrations: *Turner* v. *Richardson,* 7 East, 335; *Thomas* v. *Pemberton,* 7 Taunt. 206; *In re Oak Pits Colliery Co.* 21 Ch. Div. 322 ; *In re Silkstone & Dodworth Coal and Iron Co.* 17 id. 158 ; *In re North Yorkshire Iron Co.* 7 id. 661; *Ex parte Faxon,* 1 Lowell, 404; *Woodruff* v. *Railroad Co.* 93 N. Y. 609 ; *People* v. *Insurance Co.* 30 Hun, 142 ; *Martin* v. *Black,* 9 Paige, 641 ; *Commonwealth* v. *Insurance Co.* 115 Mass. 278; *People* v. *Trust Co.* 82 N. Y. 283; *In re Hydropathic Co.* 28 Ch. Div. 470 ; *In re National Arms Co.* 28 id. 474; *In re Building Society,* 42 id. 343.

The most liberal rule adopted by the United States Supreme Court is stated in *Oil Co.* v. *Wilson,* 142 U. S. 313.

These general propositions find support in *Smith* v. *Goodman*, 149 Ill. 75.

Where a receiver or an assignee so deals with the estate that it may be inferred that he intends to either occupy the premises for the use and benefit of the estate or to dispose of the leasehold, he must pay the stipulated rent.    2 Platt on Leases, 435 ; *In re Oak Pits Colliery Co.* 21 Ch. Div. 322.

Mr. JUSTICE CARTER delivered the opinion of the court:

We agree with the Appellate Court in holding that the contract between appellee and Morris, and which he assigned to the New England Clam Bake Company, partook of the nature of a lease, by which a certain space in the World's Fair grounds, 50 by 250 feet, was set apart to the clam bake company, to be used by it for a restaurant, under the conditions specified, during the continuance of the exposition, for the stipulated price or rental of twenty-five per cent of the gross receipts. When appellant, as trustee under the two deeds of trust executed by the company, took possession of the property, effects and premises on the 8th day of August, about one-half of the term had expired, and the company was then in arrears to appellee to the amount of $2763.85. The Equitable Trust Company on August 9, under a bill filed by judgment creditors of the clam bake company, was appointed receiver, and by order of the court and consent of appellant took possession of the premises and of all the property and effects then in the hands of appellant as trustee. It is not, of course, claimed that the receiver, by the mere fact of its appointment and taking possession, became bound to perform the contract, but the question is whether, after it had taken possession and under the order of the court carried on the business as it had theretofore been carried on by the insolvent company, until the end of the term, and received all the benefits and profits of the contract from thenceforward, it should not

also, in view of the circumstances shown in the record, be required to assume the burdens and to pay the stipulated price for the part of the term it so carried on the business and received the receipts.

The total gross receipts of the receiver were $57,974.95, and the court ordered that one-fourth of this amount be paid to appellee, but refused to order the receiver to make good out of this fund the default of the insolvent company. It is difficult to see any just grounds on which to base objections to this order. But appellant insists that if the receiver was bound to pay anything, it was bound to pay only a reasonable compensation for the privileges enjoyed, and was in nowise bound by the price stipulated in the contract, and insists that it is shown by the pleadings upon which the question arises, that the contract price was unreasonable and excessive, and that the court erred in refusing to refer the cause to the master to take proof as to the reasonable value of the privileges the receiver enjoyed. This position cannot be sustained on this record. The contract with appellant was the principal thing of value in the assets of the company, and its value consisted in the continuance of the use of the premises set apart and of the privileges conceded by the contract. This was recognized by the bill under which the receiver was appointed, and it seems to have been one of the purposes of the bill to continue the contract in force and prevent the discontinuance of the business under it and the closing up of the restaurant. It contained this allegation: "And your orators show that the creditors of the said company are pressing it for payment, and especially the World's Columbian Exposition is demanding immediate payment of certain sums claimed to be due it from said clam bake company, and is threatening to close up the restaurant and the business of said clam bake company for want of such payment; and your orators show that if said restaurant is closed the said clam bake company has no substantial assets with which its indebt-

edness can be paid. If a receiver is appointed and allowed to conduct and close out said business and reduce its assets to money in due course, your orators believe that a large part, if not the whole, of the indebtedness of said company will be paid." And this prayer: "That a receiver may be appointed of the property, assets and estate of said company, who shall take possession thereof and convert the same into money and distribute the same according to law, and in the meantime, for the purpose of more effectually realizing the proper returns from such assets, that said receiver may be authorized by a further order of court to conduct and manage the business of said New England Clam Bake Company and keep said restaurant and clam bake in operation; that an injunction may issue, pursuant to the practice in this court, enjoining all parties from interfering with said receiver or his possessions," etc. And in the order of the court appointing the receiver, among other things, was the following: "And that said receiver proceed at once to take possession of all the property of said company, and re-open its said restaurant at the World's Fair, and to continue, until the further order of the court, to conduct the business thereof as near as may be in the manner in which it has heretofore been conducted, and for that purpose to make such purchases and employ such help as may seem needful."

Appellant, who was then in possession, as trustee, under the deeds of trust, was not hostile to these proceedings, but consented thereto and voluntarily delivered possession to the receiver, with a provision in the order that all his rights should be preserved to the same extent as if he had retained possession. It was not by any of the parties at that time suggested to the court that the contract price was excessive, and that the receiver ought not to continue the business on the same basis as it had been carried on by the insolvent, nor did the receiver, in any of its reports to the court, make any com-

plaint of the contract. Nothing, however, was paid to appellant, although the receiver paid all the rest of the expenses of the receivership, and appellee on September 14 filed its intervening petition for an order directing the receiver to pay the percentage stipulated in the contract. This petition was answered by appellant on the 16th of October, and the allegation in the petition that the receiver was authorized by the court to conduct the business under the contract was then denied, and for the first time, so far as the record discloses, the position was taken that the percentage reserved in the contract was unreasonable and unfair to the other creditors, and it was not until after the close of the exposition, and then by amendment to the answer, that it was alleged or claimed that the contract price was in excess of the reasonable value. By this amendment it was alleged "that said percentage is greatly in excess of the fair and reasonable value of the premises and privileges used and enjoyed by said receiver for the conduct of said restaurant business." It would seem that from such a state of facts all parties must at the time have understood that the receiver, under the order of the court, had elected to perform the contract undertaken by the clam bake company, and to realize and take for the benefit of its creditors all there was of value to them to be derived from such performance.

The general principle contended for by appellant, that a receiver has, subject to the order of the court, the right to elect whether he will perform the contract or not, and is entitled to a reasonable time after taking possession in which to make such election, is not denied. It is so laid down by many authorities. *Railroad Co.* v. *Humphreys,* 145 U. S. 82, 105; *Park* v. *Railroad Co.* 57 Fed. Rep. 799; *Railroad Co.* v. *Railroad Co.* 58 id. 268; *United States Trust Co.* v. *Wabash Railway Co.* 150 U. S. 287; *Central Trust Co.* v. *Wabash Railway Co.* 34 Fed. Rep. 259. See, also, *Express Co.* v. *Railroad Co.* 99 U. S. 191; *Ellis* v. *Railroad Co.* 107 Mass. 1;

*In re Metz,* 6 Ben. 571; *In re Hamburgher,* 12 Nat. Bank Reg. 277; *In re Lynch,* 7 Ben. 26. But we have been referred to no case holding that where the lease or contract is of itself a thing of value to the creditors, and the receiver, under the order of the court, takes possession of the premises and conducts the business which the insolvent had been unable to continue, and, without any act of disaffirmance or notice that he would not be bound by the contract, completes the term and receives the profits and all the benefits from such possession and continuance of the business, the receiver may then repudiate the contract and pay only on the basis of a *quantum meruit.*

It is, however, contended by appellant that the receiver was not his receiver, or one appointed on his application, and that the lessor must himself be the actor in such cases, and must put the receiver to his election, and that unless he does so the receiver is bound to pay only the reasonable value, and in support of this proposition cites some of the cases above mentioned. We shall not stop here to analyze these cases, but an examination will show that they do not sustain the proposition insisted on by appellant to the extent that in all cases, or under facts similar to those in the case at bar, the receiver will not be bound by the terms of the lease unless put to his election by the lessor. As was said by this court in *Smith* v. *Goodman,* 149 Ill. 75, in reference to an assignee under the act concerning voluntary assignments (p. 81): "The assignee is entitled to a reasonable time in which to ascertain whether the leasehold estate can be made available for the benefit of creditors or not. *  *  * There is not entire uniformity of decisions as to when the assignee will be held to have accepted the lease and bound himself to perform its covenants, and no general rule can be laid down as to the effect of specific acts of the assignee in determining whether there has been an election to take the leasehold as a part of the assigned property. An examination of the adjudged cases is valuable only

as fixing the general principle by which the case is to be governed, which would seem to be, that the assignee will not be held to have accepted the lease unless it be shown that he has done so expressly, or, by unequivocal acts inconsistent with the right of entry by the landlord, has indicated an election to appropriate the leasehold estate." No reason is perceived why the receiver may not either expressly elect, or by unequivocal acts inconsistent with the right of entry by the landlord, indicating an election to appropriate the leasehold estate, be held to have done so impliedly, without any act on the part of the landlord whatever putting the court or the receiver to an election. Under the facts shown by this record it would be inequitable to allow the receiver, or appellant for the receiver, to repudiate the contract, and the courts below were correct in holding that the receiver must be held to have elected to adopt the contract.

In view of the above recited facts we do not deem it important whether appellee had a right of re-entry or not for non-payment of the percentages reserved in the contract, or whether or not it had the right to declare a forfeiture, for if the receiver, by the consent of the creditors, elected to take the place of the insolvent and to perform the contract for the remainder of the term, and did so, receiving the benefits therefrom, a court of equity would not permit its said receiver at the end of the term, when it would be too late for the other party to take any action it might think proper for the protection of its own interests, to say that it had not assumed the obligation to pay at the contract price.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*