THE LINK BELT MACHINERY COMPANY

*v.*

GEORGE R. H. HUGHES.

*Opinion filed June 23, 1898.*

1. RECEIVERS—*when a receiver is bound by terms of insolvent's lease.*
A receiver who, under an order of court, takes possession of the
property occupied by his insolvent, continuing the business therein
and receiving the benefit of such possession for a reasonable time
without any act of disaffirmance or notice to the owner of his in-
tention not to adopt the lease, cannot of right repudiate the lease
and settle for rent on the basis of *quantum meruit.*

2. SAME—*receiver's election to adopt lease need not be express.*  An elec-
tion by a receiver to adopt his insolvent's lease will be implied
where he continues in possession of the property, conducting the
business for a reasonable time without seeking to make any dif-
ferent arrangement with the landlord, or requesting the court to
order whether or not the rent shall be continued as under the lease.

3. SAME—*receiver adopting lease takes subject to lien created thereby for
rent.*  A lease, giving the lessor a lien upon all of the lessee's prop-
erty for rent reserved, is binding as between the lessor and lessee

and upon the lessee's receiver, who elects to adopt the lease; and upon a sale of the property the lien attaches to the proceeds as against the party upon whose application the receiver was appointed and ordered to continue the business, and who furnished money to the receiver for that purpose, after representing to the court that the lease was a valuable possession of the estate.

*Link Belt Machinery Co.* v. *Hughes,* 62 Ill. App. 318, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

Appellee was the owner, on the 13th day of March, 1893, of certain premises known as the "Hughes Dock," on the north-west corner of Thirty-fifth street and the south fork of the south branch of the Chicago river, in the city of Chicago, and on that day leased the premises to the Standard Eggette Coal Company until April 30, 1895, for a consideration of $10,225. Of this amount, $625 was payable at the execution of the lease, and the balance in monthly installments of $400 each. The lease contained the following provisions:

"And it is expressly understood and agreed by the said party of the second part hereto, for itself and its successors and assigns, that the whole amount of rent reserved and agreed to be paid for said above demised premises, and each and every installment thereof, shall be and is hereby declared to be a valid and first lien upon any and all buildings and improvements on said premises, or that may at any time be erected, placed or put on said premises by said party of the second part, its successors or assigns, and upon its, his or their interests in this lease and the premises hereby demised. It is expressly understood and agreed by and between the parties aforesaid, that if the rent above reserved, or any part thereof, shall be behind or unpaid on the day of payment whereon it ought to be paid as aforesaid, * * * it shall or may be lawful for the party of the first part,

* * * at his election, to declare said term ended and into the said demised premises, or any part thereof, either with or without process of law, to re-enter, and the party of the second part, or any other person or persons occupying, in or upon the same, to expel, remove and put out, using such force as may be necessary in so doing, and the said premises again to re-possess and enjoy as in his first and former estate, and to distrain for any rent that may be due thereon, upon any property belonging to the party of the second part, whether the same be exempt from execution and distress by law or not; and the party of the second part in that case hereby waives all legal rights which it now has or may have to hold or retain any such property under any exemption laws now in force in this State, or in any other way, meaning and intending hereby to give the party of the first part, his heirs, executors, administrators, agent, attorney or assigns, a valid and first lien upon any and all the goods, chattels or other property belonging to the party of the second part, as security for the payment of said rent, in manner aforesaid, anything hereinbefore contained to the contrary notwithstanding."

On the second day of January, 1894, the Link Belt Machinery Company filed a bill in equity in the nature of a creditor's bill against the eggette company for the purpose of enforcing the collection of a judgment for about $615, which it held against the latter company. The bill also prayed for the appointment of a receiver. Upon hearing, the court appointed Arthur D. Dana receiver of the property and assets of the eggette company, including the premises belonging to appellee, and in the decree or order of appointment it was provided by the court that the receiver "continue the business of manufacturing artificial coal as now carried on by the defendant eggette company; that he employ suitable persons to conduct such business; that he purchase necessary materials and supplies; that he pay for such ma-

terial, supplies and services from the funds coming into his hands as such receiver; that he pay rent and other such charges, * * * to the end that the property and estate of the eggette company, as described in the bill, may be preserved and conserved pending the further order and the final decision of the court."

The receiver took possession of the leased premises on the day of his appointment, and continued therein until about the 24th day of January, 1895. At the time of his appointment no rent was due from the eggette company, such rent having been paid up to and including the month of December, 1893. The receiver paid the January rent, 1894, amounting to $400. Appellee, in February or March of that year, filed his application for the payment of rent, and on March 12 an order of the Superior Court was entered that the receiver pay out of the first moneys coming to him in the course of administration subject to costs of administering the said estate, $800 to appellee for rent of February and March, and that said amount should be a lien upon the property and effects of the eggette company then in the receiver's hands, as expense incurred in administering said estate. Subsequently an order was made by the Superior Court directing the receiver to sell most of the property of the eggette company, and in compliance with such order the property was sold, realizing $2218. Upon the incoming of the receiver's report of sale, appellee filed a supplemental petition, in which he claimed a lien upon the proceeds of such sale for rent due him at that time, amounting, as stated in his petition, to $4800. The matter was referred to the master in chancery, who took evidence, and reported that there was due appellee, under the lease, $3774.38, being the rental for ten months from February 1 to November 30, 1894, less $225.62 received by him for dockage fees. The master further found, that by the terms of the lease Hughes had, as against the eggette company, a lien upon the property sold by the receiver, and that the receiver

could not, in such case, make any defense not available to the eggette company, and that by the terms of the order confirming the sale the lien of Hughes had been transferred from the property to the proceeds, and recommended that the prayer of the appellee's petition be granted.   Exceptions were filed, and upon a hearing of these, together with the petition filed by appellant, setting forth that under an order of the Superior Court before that time entered, authorizing the receiver to borrow money to conduct the business, appellant had advanced to him about the sum of $1400 for the purpose of carrying on the business, and that appellant was entitled to be paid out of the proceeds of the sale of said property before the payment of the claim of appellee for rent, the Superior Court confirmed the master's report, and ordered the receiver to pay the proceeds of the sale of the property, less expenses of sale and wages of watchmen, to appellee, on account of rent.   The sum so ordered to be paid to appellee amounted to $2138.   From this decree of the Superior Court an appeal was prayed to the Appellate Court for the First District, whereupon, upon a hearing, the decree was confirmed, and thereupon this appeal was prosecuted to this court.

BRECKENRIDGE & RICH, (FRED L. BROOKS, of counsel,) for appellant.

H. S. & F. S. OSBORNE, and R. F. PETTIBONE, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

One of the reasons urged by appellant in this cause why the judgment of the Appellate Court affirming the decree of the Superior Court of Cook county should be reversed, is, that a receiver, by taking possession of leased premises, does not elect to adopt the lease of the

individual, firm or corporation of which he is receiver, nor does he become bound by the terms of the lease.

There can be no denial of the proposition that a receiver has, subject to the order of the court, the right to elect whether he will perform or comply with the provisions of the lease held by the party for whom he is acting, and that he is entitled to a reasonable time after taking possession in which to make the election whether he will continue such lease. (*Railroad Co.* v. *Humphreys,* 145 U. S. 82; *Park* v. *Railroad Co.* 57 Fed. Rep. 799; *Railroad Co.* v. *Railroad Co.* 58 id. 268; *United States Trust Co.* v. *Wabash Railway Co.* 150 U. S. 287; *Central Trust Co.* v. *Wabash Railway Co.* 34 Fed. Rep. 259; *Express Co.* v. *Railroad Co.* 99 U. S. 191; *Ellis* v. *Railroad Co.* 107 Mass. 1; *In re Metz,* 6 Ben. 571; *In re Hamburgher,* 12 Nat. Bank Reg. 277; *In re Lynch,* 7 Ben. 26; *Spencer* v. *World's Columbian Exposition,* 163 Ill. 117.) But in a case where the lease or contract is of itself a thing of value, and the receiver, under the order of the court, takes possession of the premises and conducts the business which the insolvent had been unable to continue, and, without any act of disaffirmance or notice to the owner of the premises indicating that he would not be bound by the contract or terms of the lease, continues to hold the premises and conduct the business under the order of the court, receiving all the benefits of the possession of such premises, he has no right to repudiate the contract and pay rent for the premises only on the basis of *quantum meruit.*

Where a receiver has continued the business of the insolvent for a reasonable time, paying to the owner of the premises the rent specified in the lease held by the insolvent, and has raised no question as to the terms or conditions of the lease, it will be considered as an adoption by him of the terms of the lease during the time he was occupying such premises, under the order of the court, for the continuance of the business of the insolvent. As held by this court in *Spencer* v. *World's Colum-*

*bian Exposition, supra,* (on p. 128): "No reason is perceived why the receiver may not either expressly elect, or, by unequivocal acts inconsistent with the right of entry by the landlord indicating an election to appropriate the leasehold estate, be held to have done so impliedly, without any act on the part of the landlord whatever putting the court or the receiver to an election."

No express declaration by the receiver to the landlord of his intention or election to abide by or carry out the terms of the lease or contract of his insolvent is necessary. It may be done by acts, by continuing in possession of the premises and for a time paying the rent provided for in the lease, by making no request to the court which has appointed him to order whether or not the rent shall be continued, or by a failure to make other and different arrangements with the landlord on the question of amount or terms of the lease. Where none of these circumstances exist indicating an intention on the part of the receiver to hold the premises under other or different terms from those named in the lease, it would be unjust to permit a receiver to say he intended to hold such premises under a *quantum meruit*, and not under the terms of the lease.

In *Blackall v. Morrison,* 170 Ill. 152, where a question in some respects similar was presented to this court, we said (p. 161): "It would be highly unjust to allow the receiver to occupy the premises under an order providing for the payment of a fixed sum per month as rent, and after such occupancy had continued for nearly a year, while the parties were contending as to whom the monthly sum was to be paid, to insist that payment of rent should not be made according to the provisions of the order, but that the party entitled to the rent should be required to show by proof the reasonable rental value thereof." In this case, appellant had filed its bill asking for the appointment of a receiver for the Standard Eggette Coal Company, and in such bill it was alleged that the eggette company had spent large sums of money in erecting

its plant and machinery on the premises in question, and that it had reached a point where appellant was informed and believed its business could be successfully and profitably continued. Appellant especially asked and prayed that the receiver be ordered to continue such business, and represented to the court that the lease in question was one of the valuable properties of the insolvent company. At its instance the court ordered the receiver to continue the business in which the insolvent company was engaged, employ suitable persons to conduct such business and purchase materials, and that he pay the rent and other charges, to the end that the property of the insolvent should be preserved and conserved pending the further order of the court. There can be no question under such circumstances the receiver was put to no election, but by continuing in possession of the leased premises, which were represented to be one of the valuable properties of the insolvent, he became bound to pay the rent named in the lease.

It is urged by appellant that where the receiver had in his hands only the sum of about $2138, and the rent, together with money borrowed by the receiver to continue the business, the receiver's fees and other expenses were largely in excess of that amount, the same should have been ordered to be prorated. We are not called upon to determine that question in this case. The lease in question expressly gave to appellee a lien upon all the property of the lessee for rent which should remain due and unpaid. The parties had a right to enter into a contract of this nature, and it was binding between the lessor and the lessee. When the receiver took possession under the order of the court the lease was not changed. The court having ordered the receiver to occupy the leased premises under the lease, the receiver took the property subject to the same terms and conditions as it was held by his insolvent. If appellee had a lien against the property for rent he also had a lien

against the property after it thus passed into the hands of the receiver. In the case of *Hooven, Owens & Rentschler Co.* v. *Burdette*, 153 Ill. 672, which was a case where an assignee of an insolvent debtor had taken possession of property which had been sold to the insolvent under a contract not recorded, retaining a lien until the purchase money had been paid, we held the rule was well settled that an assignee of a failing debtor takes the property assigned subject to the equities, liens or encumbrances which existed against the same in the hands of the insolvent, and cited in support of this rule, *Willis* v. *Henderson*, 4 Scam. 13, *Hardin* v. *Osborne*, 94 Ill. 571, *Jenkins* v. *Pierce*, 98 id. 646, *Jack* v. *Weiennett*, 115 id. 105, and *Union Trust Co.* v. *Trumbull*, 137 id. 146. We held also in that case, such lien was transferred to the purchase money arising from the sale of such property. In this case, where the property was sold by the receiver under an order of the court, preserving whatever rights existed in favor of appellee, Hughes, his lien continued and was transferred to the proceeds arising from the sale of such property, and was prior to the claims of other creditors or other costs. In the absence of such a lien reserved upon the property in the lease for the payment of unpaid rent, a different question might arise as to the prorating of the purchase money between a landlord and those entitled to the costs of administration.

Appellee having the right to his lien upon the purchase money arising from the sale of the property upon which he had reserved a lien for unpaid rent, and also to receive from the receiver the same rent provided for in the lease, it is unnecessary to discuss the other questions raised by appellant.

The judgment of the Appellate Court for the First District affirming the decree of the Superior Court of Cook county is affirmed.     *Judgment affirmed.*