CITIZENS SAVINGS & TRUST COMPANY and another, Appellants, vs. ROGERS, Trustee, and others, Respondents.

*November 16, 1915—February 1, 1916.*

*Banks and banking: Liquidation by commissioner of banking: Liability for rent: Offsets: Waiver: Bankruptcy: Rights of trustee: Possession of property: Surrender: Mortgagee in possession: Right to rents: Courts: Enforcing liability of commissioner of banking: Jurisdiction.*

1. Where, pursuant to sec. 2022, Stats., the commissioner of banking takes possession of the property and business of a banking corporation and while liquidating its affairs occupies and uses premises of which such corporation was lessee, he is liable to pay for such use out of the funds of the corporation in his hands; and the rent stipulated in the lease fixes the measure of such liability.

2. Where at the time the commissioner took charge of an insolvent trust company a certain sum was due to the company on open account from its lessor, and thereafter the lessor became bankrupt and the commissioner and the trust company filed their claim on open account against such lessor in the bankruptcy proceedings, stating in the proof of claim that the said sum was due over and above all setoffs, they thereby waived their right to offset said sum against rent due the lessor.

3. Amounts due to the trust company as interest on a mortgage given to it by its lessor and not included in said open account might be offset against rentals up to the time the lessor became a bankrupt; but as to rents thereafter accruing the right of offset did not exist.

4. The trustee in bankruptcy of the lessor, having become vested with the title and right to possession of the building, a part of which was leased to the trust company, was entitled to the rents so long as he elected to retain possession of the building in the interest of the creditors whom he represented.

5. Where such trustee in bankruptcy afterwards elected to surrender the building to the trustee for the holders of the bonds secured by the mortgage on the building given by the bankrupt lessor, and the bankruptcy court so ordered and said trustee for the bondholders took peaceable possession without any protest from the mortgagor or its creditors, such possession entitled the trustee to collect the rents from the lessees, including the commis-

sioner of banking and the trust company whose business was being liquidated.

6. Where a mortgagee obtains peaceable possession of the mortgaged property he may retain it until his mortgage debt is paid and may collect the rentals although the rentals themselves were not specifically mortgaged.

7. The bankrupt lessor and mortgagor having had only a ninety-nine-year leasehold interest in a part of the mortgaged building, and the trustee under the mortgage, after receiving possession from the trustee in bankruptcy, having in turn surrendered said part of the building to the owners, such owners became entitled either to their share of the rent thereafter accruing under the lease to the trust company or to the reasonable value of the use and occupancy of their premises by the commissioner of banking.

8. Even assuming that the liquidation of the business of a banking corporation under sec. 2022, Stats., is not a proceeding in or under the direction of a court, but is an administrative proceeding carried on by the commissioner of banking, a court may nevertheless entertain jurisdiction of an action against the commissioner to recover a debt for which he is legally liable and which he refuses to pay.

9. Where in such a case no action was brought, but creditors proceeded by petitions in the liquidation proceeding in the circuit court and the banking corporation and the commissioner voluntarily answered and the issues raised were without objection tried on the merits, the court had jurisdiction both of the subject matter and of the parties.

APPEAL from an order of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Modified and affirmed.*

The Pereles Block in the city of Milwaukee is a five-story building with a frontage of sixty feet on Market Square and a depth of 120 feet on Oneida street. The *Markwells* are the owners of the north twenty feet covered by said block. The remaining portion of the block was formerly owned by the N. Pereles & Sons Company. In November, 1892, the *Markwells* leased the portion of the block owned by them to the Pereles Company and James M. Pereles for the period of ninety-nine years. In January, 1907, the Pereles Company leased to the *Citizens Trust Company* [which afterwards be-

came the *Citizens Savings & Trust Company*] the basement and first two stories of the easterly forty feet of said block for a period of twenty years. On May 1, 1909, the Pereles Company conveyed the entire block by warranty deed to the Clark Realty Company, a corporation. On May 1, 1909, the Clark Realty Company issued a trust mortgage to the *Citizens Trust Company* to secure an issue of bonds amounting to $140,000. This mortgage is now in process of foreclosure. On October 2, 1913, the commissioner of banking took charge of the property and assets of the *Citizens Savings & Trust Company* for the purpose of conserving the rights of the creditors of that institution. On February 22, 1914, the First Trust Company was appointed receiver for the Clark Realty Company, and on April 3, 1914, *Julius J. Goetz* was appointed trustee in bankruptcy for such corporation. The trustee named in the trust mortgage having become insolvent, *Fred W. Rogers* was by order of the court substituted in its stead. On March 14, 1914, the bank commissioner and the insolvent filed a claim on open account against the Clark Realty Company in the bankruptcy court for $2,186.14. *Goetz* took possession of the Pereles Block and retained the same until June 30, 1914, when he abandoned or attempted to abandon the possession of it to *Rogers*. Thereafter *Rogers* attempted to take possession of the mortgaged premises and to exercise the rights in reference to the same that might have been exercised by the Clark Realty Company had it remained solvent. In the proceeding brought to foreclose the mortgage the appointment of a receiver was asked for to collect the rents and profits, but the application was denied on the ground that the trustee was already in possession and that there was no necessity for the appointment of a receiver to protect the interests of the bondholders. On July 24, 1914, *Rogers* abandoned all claim under the mortgage to the portion of the block owned by the *Markwells*. While the deed to the Clark Realty Company and the mortgage from the Clark Realty

Company covered the entire block, the grantors in the deed had no title or interest in the north twenty feet of it except the ninety-nine-year lease referred to. After the banking commissioner took over the *Citizens Savings & Trust Company* he continued to occupy the portion of the block held under lease by that company and to use the same for the purpose of carrying on the business of liquidation down to the time of the trial. The commissioner refused to pay any rent for the use of the part of the building occupied, either to *Goetz,* the trustee in bankruptcy for the Clark Realty Company, or to *Rogers,* the substituted trustee for the bondholders. The respondent *Goetz* applied to the court for an order requiring the commissioner of banking to pay to him, for the use and benefit of the creditors of the Clark Realty Company, rental from October 2, 1913, when the trust company became insolvent, to June 30, 1914, when he elected not to treat the building in question as an asset of any value for the general creditors whom he represented. It might be said that the position of the trustee was that the property was mortgaged for very much more than it was worth and that the expenses of upkeep and looking after the building amounted to substantially as much as did the revenue derived therefrom.

The respondent *Rogers* petitioned the court for an order directing the commissioner of banking to pay him the rent accruing from and after June 30, 1914. The *Markwells* united with him in this position, claiming to be entitled to a portion of the rents accruing on the outstanding leases. *Rogers* and the *Markwells* agreed between themselves upon the division which should be made of such rents. The court made the orders prayed for, and the bankrupt trust company and the bank commissioner appeal therefrom to this court.

For the appellants there were briefs by *Flanders, Bottum, Fawsett & Bottum,* and oral argument by *C. F. Fawsett.*

For the respondents *Fred W. Rogers, Nathan M. Markwell,* and *Fannie Pereles Markwell* there was a brief by

*Glicksman, Gold & Corrigan,* attorneys, and *George B. Luhman,* of counsel, and oral argument by *Nathan Glicksman.*

*Lawrence A. Olwell,* for the respondent *Julius J. Goetz.*

The following opinion was filed December 7, 1915:

BARNES, J. The appellants insist that the court erred in holding that the commissioner of banking or the trust company was liable for rent to *Goetz* or *Rogers* or the *Markwells,* and, as subsidiary to this, in deciding (1) that the leasehold estate of the trust company became the property of the bank commissioner; (2) that the commissioner occupied the premises under the lease; (3) that *Goetz* had authority to deliver the possession of the leased premises to *Rogers;* (4) that *Rogers* succeeded to the rights of the trustee in bankruptcy; (5) that *Rogers* ever had been in possession of the premises; (6) that the right to offset indebtedness due from the Clark Realty Company to the trust company against the rent claimed did not exist; and (7) that $2,500 per year was a reasonable and fair rental for the premises occupied by the commissioner.

The commissioner of banking took possession of the property and assets of the *Citizens Savings & Trust Company* pursuant to the provisions of sec. 2022, Stats. Among other things, sub. 1 of that section authorizes the commissioner, whenever it shall appear that any bank is conducting its business in an unsafe or unauthorized manner or that its capital is impaired or that it is unsafe or inexpedient for it to continue business, to forthwith take possession of the property and business of such bank and retain such possession until the corporation shall resume business or its affairs be finally liquidated. Sub. 2 requires the commissioner to give notice of the fact that he has taken possession of the assets of the bank. Sub. 3 provides that, upon taking possession of the assets and business of the bank, the commissioner is authorized to collect moneys due to such bank and to do such other things

as are necessary to conserve its assets and business, and that he shall proceed to liquidate the affairs thereof in the manner provided. It is made the duty of the commissioner to collect debts due and claims belonging to the bank, and upon the order of the circuit court to sell or compound all bad or doubtful debts, and on like order to sell all real estate and personal property of such bank on such terms as the court shall direct. The commissioner is also authorized, when it is necessary to pay the debts of the corporation, to enforce the individual liability of stockholders. Sub. 4 provides that the commissioner may appoint one or more special deputy commissioners as agents to assist him in the duties of liquidation and distribution. And a special deputy so appointed is authorized to perform such duties connected with the liquidation and distribution as the commissioner may deem proper. The commissioner is also authorized to employ such counsel and procure such expert assistants as may be necessary in the liquidation and distribution of the assets of the bank, and may retain such of the officers or employees of the bank as he may deem necessary. Sub. 5 provides for a notice to creditors, and makes it the duty of the commissioner to object to the allowance of any claim which he deems to be unjust. Sub. 6 requires the commissioner to take an inventory of the assets of the bank and to file the same as therein directed, together with a list of all claims presented against the bank. Sub. 7 provides that compensation of the special deputy commissioners, counsel, and other employees and assistants, and all expenses of supervision and liquidation, shall be fixed by the commissioner, subject to the approval of the circuit court for the county in which the bank is located, on a notice to the bank, and shall, upon the certificate of the commissioner, be paid out of the funds of such bank in the hands of the commissioner. Sub. 8 deals with the payment of dividends. The other subdivisions of this section are not material to a consideration of the questions raised on this appeal.

It appears pretty clearly to be the intent and purpose of the statutory provisions referred to, to vest the title and right of possession to the assets and property of an insolvent bank in the banking commissioner for the benefit, primarily at least, of creditors when a situation arises which warrants the commissioner in taking action under the law and he does act under it.   The commissioner is authorized to take possession of the bank assets and to collect all indebtedness due it.   If recourse to a suit became necessary it would be his duty to bring it, and, we think, to bring it in his representative capacity.   The statute (sub. 7) recognizes the fact that expenses must be incurred in connection with the winding up of the affairs of an insolvent bank, and so provides that the commissioner shall fix the wages of employees and all "expenses of supervision and liquidation," subject to the approval of the circuit court on notice to the insolvent bank, which expenses must be paid out of the funds of the bank in the hands of the commissioner.

The abstract question of the liability of the commissioner for rent of the premises held by him, or for use and occupancy thereof, is not involved in much doubt.   The lease may have been either an asset or a liability of the trust company. It was its property in any event and nominally an asset which the commissioner took with the other property.   He might repudiate it or treat it as an asset.   There was no repudiation.   He was obliged to have some place in which to transact the large volume of business necessarily incident to the liquidation of the affairs of the insolvent.   It was just as necessary that he should have space in which to transact that business as it was that he should have employees to assist him in transacting it.   He could not do the work on the street corners nor on the housetops.   For reasons satisfactory to himself he elected to occupy the former quarters of the trust company, and just why he should not be compelled to pay for the use of the premises as part of the expense of administration

is not apparent to us. Rent of premises necessarily occupied is an administration expense. 34 Cyc. 352. We are speaking now of the broad proposition made by appellants' counsel that the commissioner is not liable for rent in any case where he simply makes use of the property which the insolvent bank holds under a lease. In the case of a solvent landlord this would mean that, while the commissioner could take all of the property and assets of the insolvent and use it to pay debts and expenses aside from rent, the landlord would have to look to the insolvent for his rent while the commissioner was carrying on the liquidation proceedings, or at least until he could be evicted for nonpayment. This would be an easy method of relief against the payment of rent where the commissioner was permitted to hold possession, but it is not one that would appeal to the conscience of a court of equity or find favor in a court of law unless it was found that the law as it existed was pretty clearly in harmony with the claim made. On the point under discussion the great weight of authority is to the effect that there is liability. *Nelson v. Kalkhoff,* 60 Minn. 305, 62 N. W. 335; Loveland, Bankruptcy (4th ed.) § 313, p. 647; *Woodruff v. Erie R. Co.* 93 N. Y. 609; *Cameron v. Nash,* 41 App. Div. 532, 58 N. Y. Supp. 643; *Smith v. Wagner,* 9 Misc. 122, 29 N. Y. Supp. 284; *Smith v. Ingram,* 90 Ala. 529, 8 South. 144; *Farmers' L. & T. Co. v. N. P. R. Co.* 58 Fed. 257; *Bray v. Cobb,* 100 Fed. 270; *In re Frazin,* 174 Fed. 713; *Dayton H. Co. v. Felsenthal,* 116 Fed. 961, 965, 968; *Link Belt M. Co. v. Hughes,* 174 Ill. 155, 51 N. E. 179; *Atchison, T. & S. F. R. Co. v. Hurley,* 153 Fed. 503; *U. S. T. Co. v. Wabash R. Co.* 150 U. S. 287, 14 Sup. Ct. 86; *DeWolf v. Royal T. Co.* 173 Ill. 435, 50 N. E. 549; *Spencer v. World's C. Expo.* 163 Ill. 117, 45 N. E. 250.

There are cases which hold that the officer in charge is liable for the reasonable value of the use of the property, and not the sum stipulated in the lease. *Stoepel v. Union T. Co.*

121 Mich. 281, 80 N. W. 13; *Bell v. American P. League,* 163 Mass. 558, 40 N. E. 857; *In re Grignard L. Co.* 155 Fed. 699; *In re Sherwoods,* 210 Fed. 754; *In re J. Frank Stanton Co.* 162 Fed. 169; *In re Adams C., S. & F. House,* 199 Fed. 337; *Carswell v. Farmers' L. & T. Co.* 74 Fed. 88.

The decided weight of authority, however, is to the effect that the rent stipulated in the lease fixes the measure of liability, and we deem this to be the correct rule.

The cases cited did not involve bank commissioners acting under statutes like ours, but dealt with the liability of receivers of insolvent corporations, trustees in bankruptcy, and the like. Appellants argue that the obligations of such are different from those of the bank commissioner, who is a state officer performing statutory duties and subject to statutory liabilities only. We neither accept nor reject this somewhat narrow view of the duties and functions of the commissioner. Conceding them to be correct, he has under the statute the power, and it is, we think, his duty, to provide a place in which to transact his business where the insolvent does not own one, and it necessarily follows that the expense thereof is one of administration for which the commissioner is just as much liable as would be a receiver or trustee in bankruptcy. Whether the cases be strictly on all-fours with the one before us or not, they deal with analogous situations. The law implies a promise to pay for the use of room which was necessary for the transaction of the business which the commissioner was called upon to transact.

Taking up the other contentions of the appellants, the time for which rent was allowed should be divided into three periods: first, from October 2, 1913, when the commissioner took over the property of the trust company, to February 2, 1914, when the landlord, the Clark Realty Company, was adjudged a bankrupt; second, the period from February 2, 1914, to June 30, 1914, at which latter date the trustee in bankruptcy of the lessor elected to surrender possession of the

Pereles Block to the trustee of the bondholders; and third, the period of nine months from and after June 30th, for which the trustee of the bondholders was permitted to recover rent.

When the banking commissioner took charge of the insolvent trust company there was due the latter on open account from its landlord $2,186.14. There was also a mortgage indebtedness amounting to $73,500, falling due in 1915, on which interest had been paid to May 1, 1913. Thereafter the semi-annual instalments of interest were not paid. There became due on account of interest the sum of $1,837.50 on November 1, 1913, and a like sum every six months thereafter, as we understand the testimony.

The appellants insist that they had a right to offset these sums against any rent that might be due the lessor or its successors in interest, and that this right of setoff is superior to the right of all of the parties who are seeking to compel the payment of rents. The commissioner and the insolvent trust company filed their claim on open account against the Clark Realty Company in the bankruptcy proceedings involving that company. The proof of claim which was verified by the joint claimants stated that the amount claimed was due over and above all setoffs. The trial court was of the opinion that the claimants elected to claim the entire indebtedness in the bankruptcy court and had therefore waived their right to make the offset now claimed. Conceding this to be true as to the claim on open account, we do not see how it can affect the right of offset against the sums due for interest. The Clark Realty Company was entitled to the rent which accrued up to February 2, 1914, when it went into bankruptcy. At this time it was owing the trust company over $1,800 interest money. If the trust company was solvent there would be no doubt about the right to make the offset. *Jones v. Piening,* 85 Wis. 264, 55 N. W. 413; *Pendleton v. Beyer,* 94 Wis. 31, 68 N. W. 415; *Merchants' Exch. Bank v. Fuldner,* 92 Wis.

415, 66 N. W. 691. We do not see how this right has been lost because of the insolvency of the trust company, and we hold that the appellants had .the right to offset amounts due. for interest against rentals up to the time the Clark Realty Company became a bankrupt.

As to rents accruing after the Clark Realty Company went into bankruptcy, it would seem clear that the right of offset did not exist. The rights of its creditors then became fixed, and they were entitled to have the rents accruing thereafter impounded by the trustee in bankruptcy so that the same might be applied in settlement of their claims. *Johnston v. Humphrey,* 91 Wis. 76, 80, 64 N. W. 317; *Oatman v. Batavian Bank,* 77 Wis. 501, 503, 46 N. W. 881; *Jones v. Piening, supra; McLaughlin v. Winner,* 63 Wis. 120, 23 N. W. 402; 1 Loveland, Bankruptcy (4th ed.) § 320. The trustee of the bankrupt became vested with its title and right of possession in the Pereles Block. Sub. 5, sec. 70, Bankruptcy Act; Collier, Bankruptcy (10th ed.) pp. 1004, 1005. The trustee had a reasonable time in which to decide whether this block was an asset or a liability. It was his duty to take it over with the other assets of the bankrupt. If satisfied, after a full investigation, that the interests of the creditors whom he represented would best be subserved by abandoning the property, he might, with the consent and approval of the court, do so. In the meantime he was obliged to supply fuel, provide janitor service, make necessary repairs, and to assume a part of the obligations incidental to ownership, and it is pretty clear that he was entitled to the rents so long as he elected to take and retain possession of the property in the interest of the creditors whom he represented. To hold that his surrender of possession related back to the time he took it would cast upon the bankrupt estate the burdens of maintenance while possession was held without participation in the benefits, which would be manifestly unfair to the creditors of the Realty Company. *Equitable L. & S. Co. v. R. L. Moss & Co.* 125 Fed. 609; *In re Frazin,* 183 Fed. 28.

The sum of $1,875 was allowed on the petition of *Rogers,* trustee for the bondholders. He predicates his claim on the fact that he was a mortgagee in possession of the premises. When *Goetz* abandoned the premises with the consent of the bankruptcy court, that court made an order directing that the possession of the premises be surrendered to *Rogers* as trustee. Thereafter *Rogers* exercised the dominion and control over the property that is usually and ordinarily exercised by a landlord. He employed janitors, provided fuel and elevator service, and performed the duties of landlord toward the various lessees who occupied the building. He collected rents from the tenants of the building, excepting the commissioner of banking and the *Citizens Savings & Trust Company,* and all this was done without any protest on the part of the Clark Realty Company or any of its creditors. Neither the Clark Realty Company nor its representatives made any claim to the rents after possession was surrendered by their trustee, and they are not now making any claim to the rents involved in this proceeding. We cannot agree with counsel for the appellants in the contention that *Rogers* was not in possession of the premises after July 1, 1914. It is also claimed that the bankruptcy court had no power to order the trustee, *Goetz,* to deliver possession of the premises to *Rogers.* The important fact perhaps is that *Rogers* got peaceable possession, if not with the express consent of the mortgagor, at least without the slightest protest on its part. Neither do we see how this order can be treated as a mere nullity and subject to a collateral attack. Counsel further argue quite strenuously that a mortgagee in possession is not entitled to the rents of a property which he has possession of, and that such rents belong to the mortgagor and that he can be deprived of them through foreclosure proceedings only and by the appointment of a receiver in such proceedings who is directed by the court to collect the rents and apply them in payment of the mortgage indebtedness. It might be here remarked that it is not the mortgagor who is making this claim,

but a third party whose duty it is to pay rent, and it might well be said, under the circumstances here existing, there having been assent and acquiescence on the part of the mortgagor and its representatives in the action taken by the trustee named in the mortgage, that a tenant could not successfully. contest the payment of rent to the trustee in possession. However this may be, we think that the mortgagee in possession is entitled to collect the rents accruing on the mortgaged property and to apply them in settlement and satisfaction of the mortgage debt.   This was the conclusion reached by the trial court, and it was because of this conclusion the appointment of a receiver was refused.   Some authorities hold that a receiver will not be appointed where a mortgagee is in possession of mortgaged property and caring for it and receiving rents.   27 Cyc. 1626; *Sleeper v. Iselin & Co.* 59 Iowa, 379, 13 N. W. 341; *Cummings v. Cummings,* 75 Cal. 434, 17 Pac. 442.   The facts in the case show that the mortgage security is worth very much less than the amount due on the outstanding bonds secured by the mortgage.

This court has frequently held that when a mortgagee obtains peaceable possession of mortgaged property he may retain such possession until his mortgage debt is paid.   *Hennesy v. Farrell,* 20 Wis. 42; *Stark v. Brown,* 12 Wis. 572; *Gillett v. Eaton,* 6 Wis. 30; *Tallman v. Ely,* 6 Wis. 244; *Brinkman v. Jones,* 44 Wis. 498, 512.   If this right of possession does not carry with it the beneficial use of the mortgaged property it is a barren right indeed, and we hold that peaceable possession carries with it the right to collect rentals although the rentals themselves are not specifically mortgaged.

It was said in *Schreiber v. Carey,* 48 Wis. 208, 214, 215, 4 N. W. 124, although not essential to a decision in the case, that a mortgagee in possession was entitled to apply the rents and profits which can be derived from such possession to the discharge of his debt.   The cases are generally to the effect

that where a mortgagee in possession does collect rent he is entitled to apply it on the mortgage debt. 27 Cyc. 1250. The fact that a tenant may refuse to pay cannot change this rule, and it has been held that under the general doctrine of equity the right to rents is vested in the mortgagee in possession. *Huguley Mfg. Co. v. Galeton C. Mills,* 94 Fed. 269, 36 C. C. A. 236.

As to the *Markwells* the situation is this: The Pereles Company had a ninety-nine-year lease of this interest, which passed to the Clark Realty Company by a warranty deed covering the leased premises. The Clark Realty Company becoming insolvent, its interest in the leased premises became vested in its trustee in bankruptcy. Such trustee, not considering the interest of the insolvent in this property to be an asset, abandoned it and turned the possession of it over to the trustee of the mortgage. The trustee in the mortgage, acting in behalf of the bondholders whom he represents, has elected to claim no interest in that part of the mortgaged premises covered by the ninety-nine-year lease, and in turn surrendered the possession of the property covered by this lease to the owners on August 1, 1914. So there is no one in existence from whom the *Markwells* can collect anything for the use and occupancy of their premises except those who are actually occupying them, unless it be the *Citizens Savings & Trust Company,* now bankrupt, who is the assignee of their lessee, the Pereles Company. If this latter is their only remedy, then they may have no remedy at all except foreclosure and eviction. The *Markwells,* however, are the owners of the premises and have all the possession and right of possession which inheres in a landlord, and we think they are entitled to either the rent stipulated in the existing lease to the trust company or to the reasonable value of the use and occupancy of the premises, which in this case, under the findings of the court, amounts to the same thing. The finding that the premises occupied by the commissioner were worth

the rent stipulated in the lease under which the trust company held is sustained by the evidence.

A question of jurisdiction is also raised. It is said that the liquidation of the business of an insolvent bank under sec. 2022 is not a proceeding in or under the direction of a court, but an administrative proceeding carried on by a state officer who is empowered and directed to refer certain legal questions arising in the course of administration to the courts. This contention, if correct, does not prevent the courts from entertaining jurisdiction of an action against the commissioner to recover a debt for which he is legally liable and which he refused to pay. No action was brought in the present instance, the respondents having proceeded by petitions in the liquidation proceedings in the circuit court. The appellants answered such petitions, and the issues raised were without objection tried on the merits. The court certainly had jurisdiction of the subject matter of this controversy over rent, and the parties by their voluntary appearance conferred jurisdiction over their persons. However broad the powers of the banking commissioner may be, his decision that he does not owe a just claim made against him is not final.

As to the respondents *Rogers* and the *Markwells* the order appealed from is affirmed. As to the respondent *Goetz* the order appealed from is modified by reducing the recovery from $1,868.13 to $1,027.77, and as so modified the order is affirmed. Costs are allowed to the respondents *Rogers* and the *Markwells*. Costs are allowed in favor of the appellants and against the respondent *Goetz* for one half of the taxable disbursements on the appeals and $25 attorneys' fees.

*By the Court.*—It is so ordered.

A motion for a rehearing was denied, with $25 costs, on February 1, 1916.