HENRY E. MAXWELL, Receiver, Appellee, v. MISSOURI VALLEY ICE & COLD STORAGE COMPANY, Appellant.

**RECEIVERS:** Management—Right to Repudiate Pre-Existing Con-
1  tracts. A receiver has the right, within a reasonable time after his appointment, to repudiate the pre-existing executory contracts of the person or corporation for whose property he has been appointed receiver.

**CONTRACTS:** Performance — Recovery — Non-Contracted Items.
2  One may not recover for items or things which he neither furnished nor contracted to furnish. So held where a receiver

was permitted to recover for electric power furnished, but denied a recovery for a non-contracted fixed charge for keeping the plant in readiness for additional power.

*Appeal from Harrison District Court.*—A. B. Thornell, Judge.

Saturday, September 29, 1917.

Opinion states the facts.—*Modified and affirmed.*

*J. S. Dewell,* for appellant.

*C. W. Kellogg,* for appellee.

1. RECEIVERS: management: right to repudiate preexisting contracts.

Gaynor, C. J.—On the 2d day of June, 1913, the plaintiff was appointed receiver of a corporation known as Iowa Nebraska Public Service Company, a Delaware corporation. His appointment was made by the United States district court of Nebraska, in a suit pending therein to foreclose a mortgage or trust deed covering the property of said corporation in Nebraska and in Harrison County of this state. A copy of the bill in said foreclosure suit and the order appointing plaintiff as receiver was duly filed in the office of the clerk of the district court of the United States for the Southern District of Iowa, on June 7, 1913. Plaintiff duly qualified, and gave bond as required by the order appointing him, and entered upon the discharge of his duties. In the order appointing him receiver, it was provided that he should take charge of all the property of said corporation described in and covered by the trust deed, and manage and operate its business and apply the income and receipts under the order and decree of the court, and do any and all acts which might be necessary to preserve the property and the income of said company.

Among the property so coming into the hands of the

receiver was a certain electric light and power plant in the city of Missouri Valley, in Harrison County, Iowa, formerly owned and operated by said corporation. Under the power granted him by his appointment, he took possession of this plant at Missouri Valley and operated the same, and furnished to this defendant electric current from said plant for the purpose of operating defendant's plant, to wit, an artificial ice and cold storage plant. This suit is to recover for power so furnished by the receiver to the defendant company during the months of September, October, November and December. The plaintiff claims $445.51, after allowing all credits.

From the pleadings filed, it appears that the plaintiff claims in his petition and amendment that, about June, 1913, he, as receiver, entered into an oral contract with the defendant to furnish electric current for power according to a specific schedule which he sets out. In an amendment, he claims that the prices and values which he charged and for which he seeks to recover are the reasonable prices and values for such services, and that, after allowing all credits on account of such current furnished, there was due him as receiver, $445.51.

The defendant in his answer claims that the services rendered were rendered under a contract previously entered into between the defendant and the corporation for which plaintiff was receiver; that the plaintiff simply continued the business under said contract, as a representative and successor of the Iowa Nebraska Public Service Company, and by way of counterclaim, says that the plaintiff failed to comply with the terms of that contract, and by reason thereof, the defendant has been damaged in a sum far in excess of the amount claimed. Defendant denies that there was any new contract between the receiver and the plaintiff.

The real question presented involves the right of the

defendant to hold plaintiff, as receiver, to the performance of the original contract between the defendant and the Iowa Nebraska Public Service Company existing at the time plaintiff was appointed receiver, and to mulct him in damages for a breach thereof. It appears that, on September 29, 1913, or thereabouts, the Iowa Nebraska Public Service Company was adjudged a bankrupt. The original contract between the Iowa Nebraska Public Service Company and the defendant, on which defendant relies, provides, among other things, that the service corporation should furnish the defendant, at and for scheduled rates, electric current of 220 volts, in sufficient amounts at all times to continuously operate all of defendant's electric motors at any time during the continuance of the contract, and to at all times continuously furnish such electric current in full quantity desired by the defendant, and should be responsible to the defendant for all loss or damage directly resulting from a failure to furnish such current. Defendants claim that the receiver failed to perform the conditions of said contract and to furnish the current as called for by this contract, and that defendant was, therefore, unable to operate its business, and accordingly suffered damage.

It may be conceded, for the purposes of this case, that the receiver, did not comply with the requirements of this contract. It may be conceded that the defendant could not rescind or annul or destroy the efficacy of this contract so far as the service company is concerned. The question here is, Was the receiver bound to perform this contract by reason of his appointment as receiver? This was an executory contract. Of course, a failure to perform it on the part of the service company would be a breach for which that company might be liable. A claim based thereon was a matter for adjustment in the bankruptcy proceedings. The question

here is not whether the receiver can repudiate the contract
or destroy the validity or binding force of the contract be-
tween the defendant and the service company, but whether
or not this receiver, as such, is liable to the defendant for his
failure to perform.    If he had adopted the contract, there
would be some basis for holding him liable for its breach.
Upon his appointment as receiver, he was not bound to
adopt this contract.    The property was placed in his custody
by the court to be managed under the direction of the court
for the benefit of the *cestui que trust* in the deed.    He was
not the successor or representative of the service company
in any sense.    The property was taken by the court, through
its receiver, from the service company, placed in the hands of
the receiver with direction to manage and control it, under
the direction of the court, in the interests of the trustees.
Many of the failures which result in drastic actions of this
character, involving parties in bankruptcy and requiring a
sequestration of their property by the court for the benefit
of their creditors, are due to improvident contracts and
unbusinesslike methods of the original owner.    Courts take
possession for the protection and conservation of the prop-
erty.    We say, therefore, that the appointment of the plain-
tiff as receiver did not bind him to the performance of the
contracts of the original owner made before the appoint-
ment of the receiver.    He may, with the consent of the
court, adopt these contracts if, in his judgment, they are for
the best interests of the estate which he is called upon to
manage, or he may repudiate them, if not for the best
interests of the trust.    So, unless it is shown by this record
that the receiver adopted the contract, the defendant has
no standing upon his counterclaim.    After appointment,
the receiver has at least a reasonable time in which to
determine whether he will adopt or reject existing executory
contracts.    The order appointing this receiver authorized
him to operate this plant; to manage it in such manner as,

in his judgment, would produce the most satisfactory results consistent with the discharge of the business duties imposed upon him; and to do any and all acts necessary to preserve the property, franchise and income of the defunct company for the benefit of the *cestui que trust*; to sue, collect and receive the earnings and profits and other income therefrom, and to apply the income and receipts under the order and direction of the court; and to do all acts necessary for the protection and preservation of the property and income.

It clearly appears in this record that, when the existence of this contract relied upon by the defendant was brought to the notice of the receiver, plaintiff, he notified the manager of the defendant company that he repudiated and would not be bound by it; that the manager asked time for further consideration, which was given; that he told the manager at the time that he would furnish power, if needed, at scheduled rates, but not under the written contract; that thereafter, the manager told him that they would take the current; that thereafter it was furnished, but not under the contract. This was notice to the company that, as receiver, he repudiated and refused to be bound by the contract, and refused to render service under the contract. The defendant company was, therefore, bound to know thereafter that service would not be rendered by the receiver under the contract. The receiver testifies, and this is not disputed:

"When I came over to Missouri Valley, either the last of June or the first of July, I was informed that there was a contract between the defendant company and the service company, touching the furnishing of electric current to the defendant company. I asked to see the contract and they produced it. I went over the contract with the manager. I spoke to him about the ice company not paying its June bill. He said, 'Well, the contract provides that, if the ice

company sustains loss by reason of a failure to furnish current, the ice company was to be compensated for it,' and that they had sustained a considerable loss during the previous month because of the. interruptions of service, which more than offset the bill we had against the ice company. I told him when I had examined that contract that I was not bound by it and would not recognize it; that I was not controlled by any agreement; and that, if they wanted any current, they would have to pay according to the printed schedule that we have for those power rates. I told him further that I would not be responsible in any way for any damages caused by interruptions of service or any breakdown; and that, if they were not willing to take the current on these terms, I would simply discontinue service. Trapp asked me for 3 or 4 days in which to consider 'it. I was back in 3 or 4 days, and they paid the June bill, and Mr. Trapp indicated to me that they had decided to take the current. Mr. Trapp complained to me during the summer about interruption of service. I told him that I would get those things fixed up just as quick as we could. That was the very best we could do. The plant was in very bad condition when I got charge of it, and I saw the income was not sufficient to take care of it."

Without setting out the testimony further, we have to say, as a basis for our ultimate conclusion, that, upon discovering the existence of this contract, the receiver, within a reasonable time, notified the manager of the defendant company that he would not be bound by it. This was a distinct repudiation by the receiver of the obligations of the contract so far as he was concerned as receiver. The contract, therefore, cannot be made the basis of a claim for damages against him, resting as it does solely upon the claim that he did not perform this contract. It would seem like a simple proposition that one cannot be held in damages

for a failure to perform a contract which in law he is not bound to perform. The general rule laid down is that a receiver is not liable upon the covenants and contracts of the person or corporation for whose property he is appointed receiver, unless he adopts the contracts as his own. The general rule is that no executory contract is binding upon the receiver until adopted by him. It is, however, his duty to refuse to be bound by any contract which would prove burdensome or imperil the fund intrusted to his care as receiver. In *Scott v. Rainier P. & R. Co.,* 13 Wash. 108 (42 Pac. 531), it was held that a receiver of a corporation may refuse to carry out a contract entered into before his appointment, without being liable for damages for its breach; as otherwise, liabilities of the corporation upon executory contracts would become preferred claims. It is said in that case:

"By the insolvency of the company and the appointment of a receiver, * * * it was made impossible for the corporation to carry out its part of the contract, and this being so, it must answer in damages for its violation; but a liability flowing therefrom should have no better standing than any other claim for money. * * * It will be seen that, if the receiver has not the right to terminate executory contracts when their continuance would not be for the interests of the creditors, every such contract would, in effect, become a preferred claim and entitled to full performance at the expense of claims growing out of executed contracts which, in good conscience, should in all cases have the same consideration, and in some, by reason of their greater age, even more. * * * But whatever may be the logic of the matter, the rule contended for * * * is so well settled that it is not now open to question. The general proposition is well stated in 20 Am. & Eng. Encyc. of Law, on page 375, in the following language: 'The re-

ceiver is not bound to respect or continue a contract entered into before his appointment. To do so on any grounds other than necessity for the operation of the road would be to divert the earnings from the purposes for which the receivership was created. * ·* * Claims for loss incurred by the refusal of the receiver to fulfill such contracts remain in the same status as other debts of the company incurred before the receiver's appointment."

See also *Commercial Bank, etc. v. Gates*, (Mich.) 80 N. W. 13; *Brown v. Warner*, (Tex.) 11 L. R. A. 394. In this case it is said:

"Let us suppose, then, that the proprietor of a cotton gin has contracted to gin the cotton of his neighbor at a certain rate, and that, before he has performed his contract, the property is placed in the hands of a receiver, who is directed to operate it. Can it be said that he is liable in damages should he refuse to comply with the contract? Certainly not. He is appointed, not to carry out the proprietor's contracts, but to manage and preserve the property."

In that case, it is further said:

"If appellee were unable to recover damages of the company for its breach of the contract by reason of its insolvency, it is a misfortune he has suffered, doubtless, in company with numerous other simple contract creditors. For the failure to perform the contract, his cause of action was against the company, and it was not of that character which could be brought against the receivers without leave of the court."

The holding of that case is that the party to the breached contract might have a cause of action against the original contract party, but had no cause of action against the receiver for the breach of the contract, unless the receiver had ratified and adopted it as his own. Then, we take it, such

ratification or adoption might well be subject to the approval of the court appointing the receiver.

The better practice is that, before adopting an executory contract and binding the estate in his hands by such adoption, the receiver should submit the matter to the court for its approval. Improvident contracts are often the very basis of the conditions which make the appointment of a receiver necessary for the protection of the assets in the interest of creditors. *Casey v. Northern Pac. R. Co.,* (Wash.) 48 Pac. 53; *Spencer v. World's Columbian Exposition,* (Ill.) 45 N. E. 250. In this case it is said:

"The general principle * * * that a receiver has. subject to the order of the court, the right to elect whether he will perform the contract or not, and is entitled to a reasonable time, after taking possession, in which to make such election, is not denied. It is so laid down by many authorities."

This case affirms the general doctrine. See also *United States Trust Co. of New York v. Wabash Western R. Co.,* 150 U. S. 287 (37 L. Ed. 1085). The general rule is there recognized and adopted that a receiver is not bound to accept the executory contracts, or otherwise step into the shoes of the one for whose property he is appointed receiver, if, in his opinion, it would be unprofitable or undesirable to do so, and he is entitled to a reasonable time to elect whether to adopt or repudiate such contract. *Ellis v. Boston, H. & E. R. Co.,* 107 Mass. 1; *Fountain v. Stickney,* 145 Iowa 167. For a full discussion of the subjects here under consideration, see High on Receivers (4th Ed.), Sections 273-a, 273-b, 273-c, and 273-d.

We hold, therefore, that the court was right in refusing to recognize defendant's counterclaim, and in refusing to hold the receiver responsible to the defendant for a breach thereof.

This brings us to a consideration of another proposition. There is no dispute in this case that the scheduled rates for services actually rendered were adopted by the court in estimating the amount of plaintiff's recovery, and we think the court was right in this. It is shown that the scheduled rates are the reasonable rates for such services rendered. The plaintiff claims, however, in addition, a certain sum as a fixed charge. This we are inclined to think the plaintiff is not entitled to. The fixed charge is based upon the assumption that the receiver agreed to and did keep on hand a current of sufficient volume or power to operate at all times, when needed by the defendant, at least 40-horse power. This the plaintiff neither contracted to do nor did. The charge of $40 is for keeping the power in readiness for service, whether needed or not, and not for current actually supplied. It does not seem that the plaintiff should be permitted to recover this fixed charge unless it affirmatively appeared that he contracted to and did keep this amount of power supplied, whether used or not. The record affirmatively shows that plaintiff did not contract to do this, and that he did not keep or supply this full power, and is not entitled to this fixed charge of $40 a month. The amount of plaintiff's claim, therefore, should be reduced for these 4 months by $160, leaving the amount actually due plaintiff, which he has shown himself entitled to recover, $285.51, with 6 per cent interest from January 1, 1914; and for this amount plaintiff is entitled to judgment, and no more.

Thus modified, the case is affirmed.—*Modified and affirmed.*

LADD, EVANS and SALINGER, JJ., concur.

*(Marginal note: 2. CONTRACTS: performance: recovery: non-contracted items.)*