The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, Complainant, v. Equitable Trust Company of Chicago, Defendant.

First National Bank of Chicago et al., Appellants, v. Wm. J. Maresh, Receiver of Equitable Trust Company of Chicago, Appellee.

Gen. No. 37,382.

Opinion filed November 27, 1934.

SIDNEY J. WOLF, for appellants.

Roy D. Keehn and W. M. Keeley, for appellee.

Mr. Justice Sullivan delivered the opinion of the court.

By this appeal the First National Bank of Chicago and Garabed T. Pushman, intervening petitioners, seek to reverse an order of the circuit court entered November 4, 1933, approving and confirming the election by the receiver of the Equitable Trust Company of Chicago, an insolvent bank, to vacate the premises, to abandon the improvements on such premises to lessor and not to accept but to reject the lease under which the Equitable Trust Company of Chicago occupied the premises where it had conducted its banking business.

December 21, 1931, the auditor of public accounts of the State of Illinois filed a bill of complaint for the dissolution of the Equitable Trust Company of Chicago (hereinafter referred to as the Equitable Bank). The bill alleged that Wm. J. Maresh was appointed receiver for the Equitable Bank by the auditor of public accounts December 7, 1931; that pursuant to his appointment the receiver took possession of the books, records and assets of the bank; and that the furniture and fixtures and the building occupied by the bank were owned by it. The bill prayed that the receiver be authorized to dispose of the real estate and personal property of the bank; that he be vested with the title to all of its assets; and that the same be converted into money and distributed.

It is admitted that the Equitable Bank was the owner, through assignment and conveyance, of the unexpired estate for years in the property located at 2218 South Michigan avenue, Chicago, Illinois, which was originally demised under the terms of a written lease for a term of 99 years, commencing March 1, 1910, and ending February 28, 2009, by Garabed T. Pushman, as lessor, to Landon C. Rose, lessee; that

the lease provided that the rentals stipulated therein be paid quarterly by the lessee on the first day of March, June, September and December of each year, and that the lessee shall pay all water rates and taxes, charges or assessments, general or special, which may be assessed against the property; that the lease also provided that at its termination or expiration all buildings, fixtures, etc., then on the property, shall be and remain the property of the lessor, and that no compensation shall be paid therefor to the lessee; that February 26, 1923, Garabed T. Pushman sold and conveyed to the Union Trust Company, as trustee, the property described in the lease; that through merger and consolidation the First National Bank of Chicago became the successor of the Union Trust Company, as trustee; that when the unexpired estate for years in the property was assigned and conveyed to it June 27, 1923, the Equitable Bank agreed in writing to accept and assume all of the terms, covenants and agreements contained in the lease; that the premises are improved with a bank building, which was occupied and owned by the Equitable Bank until the appointment of the receiver for said bank; and that the receiver took possession of the property December 7, 1931, and remained in possession thereof continuously until November 9, 1932.

January 28, 1932, the receiver filed a verified petition asking leave to make payment of the quarterly instalment of rent due under the lease December 1, 1931, in which he set forth the terms of the lease and alleged that under the lease the lessor might declare a forfeiture without notice if default in payment of rent continued for 60 days; that the bank building was carried on the books of the Equitable Bank at a value of approximately $70,000; that an instalment of rent became due December 1, 1931, and was unpaid; that in the opinon of the receiver this instalment of rent should be paid to prevent the forfeiture of the lease

and to preserve the value of the building as an asset in the receivership; that such payment should be accompanied by a statement that the payment would not constitute an election to accept or adopt the lease; and concluded with the prayer that the receiver be authorized by the court to pay the quarterly instalment of rent due December 1, 1931, with interest thereon.

January 28, 1932, an order was entered by the chancellor that the receiver make payment of $546.88, the quarterly instalment of rent, which became due under the lease on December 1, 1931, for the months of December, 1931, and January and February, 1932, with interest thereon, and that the payment be accompanied by a statement in writing that such payment is not an election to accept or adopt the lease, and that the question of the adoption of the lease by the receiver would remain for determination and decision after such payment.

April 1, 1932, the receiver filed a second petition containing allegations substantially similar to those contained in his petition of January 28, 1932, and asking leave to make payment of the quarterly instalment due March 1, 1932, under the terms of the lease.

An order substantially the same as the order of January 28, 1932, was entered by the court April 1, 1932, authorizing the receiver to make payment of the quarterly instalment of rent which became due March 1, 1932, for the months of March, April and May, 1932, with interest thereon, and that the receiver should accompany the payment with a statement in writing that such payment did not constitute an election to accept or adopt the lease, and that the question of such adoption of the lease by the receiver would remain for determination after said payment.

Pursuant to the orders of January 28, 1932, and April 1, 1932, the receiver forwarded checks to the First Union Trust & Savings Bank, the then trustee under agreement with Pushman, the lessor, in pay-

ment of the quarterly instalments of rent as specified in those orders, accompanied respectively by letters which included the following statement:

"This payment is not an election by this Receiver to accept or adopt the said lease above referred to or its provisions, and the question of such adoption by this Receiver of the said lease and/or its provisions will remain for determination and decision hereafter."

July 13, 1932, the receiver filed a petition for leave to reject the obligations of the lease. The intervening petitioners (hereinafter referred to as petitioners) filed an answer to this petition wherein they prayed that the court find that the lease had been accepted by the receiver and that he be ordered and directed to pay and discharge all of the obligations of the lease. The cause was thereupon referred to a master in chancery.

October 15, 1932, an order was entered by the chancellor, without prejudice to the rights of the petitioners, authorizing the receiver to move from the bank building to another office.

December 10, 1932, the petitioners filed a petition setting forth the terms of the lease in question and praying that the receiver be authorized and directed by the court to pay the rent due to date, as well as the general taxes and special assessments which had accrued; that the receiver be required to perform all the covenants and agreements contained in the lease; and that an order be entered finding that the receiver has elected to adopt the provisions of the lease. The receiver filed an answer denying the right to the relief prayed in the petition.

At the hearing before the master evidence was introduced by the receiver that the fair rental value of the bank building was approximately $175 a month. The receiver testified that on several occasions he informed Garabed T. Pushman that he would not adopt the lease, which testimony was denied by Pushman and

his former attorney, who testified in behalf of the intervening petitioners.

The receiver remained in possession of the bank building until November 9, 1932, at which time he delivered the keys to the petitioner, the First Union Trust & Savings Bank, which later, through consolidation, became the First National Bank of Chicago.

The master found in his report that the receiver elected within a reasonable time after taking possession of the premises to reject the terms of the lease, and recommended "that an order be entered by the court . . . directing the receiver to pay rent according to the terms of the said lease for the period between the payment of the last rent in May, 1932, to and including November, 1932, during which time the property of the estate actually remained on the premises, and also directing the receiver to reject the lease and vacate the premises."

November 4, 1933, the chancellor entered an order finding that the receiver had paid the rent up to and including the month of May, 1932, at the rental rate provided for in the lease; that the receivership estate is liable for the reasonable rental of the premises during the time the receiver used same; that the leasehold was not a valuable asset of the receivership estate; that the receiver should be ordered to reject the lease and to vacate the premises; that the receiver did not adopt or accept the lease or its obligations, but within a reasonable time elected not to adopt the lease. The receiver was directed in and by the order to make payment as compensation for the use of the premises for the period from June 1, 1932, to and including November, 1932, in the sum of $1,093.75. The court also ordered the receiver, when he paid the rent, to deduct therefrom $150 taxed against the petitioners as part of the master's fees and charges which had theretofore been paid by the receiver. The amount of rent

which the court ordered the receiver to pay for the period from June 1, 1932, to November 30, 1932, is the amount required under the lease, but does not include the taxes for the period that the receiver was in possession of the premises.

The law is settled that the receiver was entitled to a reasonable time after he took possession of the premises to elect whether to adopt or reject the lease.

The petitioners contend that the receiver accepted and affirmed the lease by remaining in possession of the bank building from December 7, 1931, to November 9, 1932; by filing verified petitions January 28, 1932, and April 1, 1932, asking leave of the court to pay the rent provided in the lease in order to prevent its forfeiture; by having orders entered January 28, 1932, and April 1, 1932, authorizing him to pay the rent provided in the lease to prevent a forfeiture thereof; by the receiver attempting to sell the leasehold for the benefit of the receivership estate; by the receiver's failure to disaffirm the lease within a reasonable time; by the receiver's failure to obtain an order of court disaffirming the lease within a reasonable time; and by the receiver remaining in possession and paying the rent stipulated in the lease.

The receiver's theory is that he never adopted or accepted the lease or its obligations; that he expressly and repeatedly stated within a reasonable time that he would not adopt or accept the lease; that the lessee's interest under the lease was not an asset, but a liability with which the receivership estate should not be burdened; and that for the use and occupancy of the premises described in the lease the receiver should pay only the reasonable rental value thereof during the time he occupied the premises.

To support their contentions petitioners rely especially on *DeWolf v. Royal Trust Co.*, 173 Ill. 435, and the *Link Belt Machinery Co. v. Hughes*, 174 Ill. 155, with the holdings of which we are in full accord. How-

ever, we deem these cases inapplicable and we think they are readily distinguishable from the instant case where the facts are so essentially different.

In the *DeWolf* case it was stipulated that, included in the property taken over by the receiver there was a leasehold interest in certain storerooms and basement in Chicago, held under a lease made by the owner to the firm in receivership, from May 1, 1896, until April 30, 1897, by the terms of which lease the firm agreed to pay $75 a month rental in advance; that when the receiver was appointed on October 26, 1896, the business of the firm was being carried on in the premises and the receiver took possession and continued to occupy the premises under the lease; that on January 22, 1897, the receiver served notice upon the lessor that it would on January 30, 1897, surrender the premises as being no longer required by it; that on February 1, 1897, it delivered to the lessor part of the keys and left the remainder at his office February 3, 1897; and that the receiver paid the rent to the lessor from the time it took possession to February 1, 1897. It was also agreed that the leasehold estate was at the time of the receiver's appointment and during his occupancy valuable and available for the benefit of the creditors of the estate, and that the receiver, at the time of its appointment, elected to take possession of the premises and occupy same, as receiver, under the order and direction of the court.

On the facts in the *DeWolf* case the following clear pronouncement of the principles that control a receiver's election to accept or reject a leasehold, with which he is vested by reason of his appointment, is found at pages 437 and 438:

"The rule is, that a receiver does not simply, by virtue of his appointment, become liable upon the covenants of a lease made prior to his appointment by the party for whom he is receiver, but he has a right to elect whether he will accept the lease and make

it his own or whether he will refuse to accept it. It might be that it would be valueless for the purpose of the trust, or even a burden, and if so, it could not be forced upon him. It is for this reason that he has, subject to the order of the court, the right of election whether he will perform the covenants or not. For the purpose of making such election he is entitled to a reasonable time to ascertain whether the lease would be desirable. The mere acceptance of the trust does not render a receiver liable for rent of the premises, and he cannot be held until he elects to hold possession as receiver or does some act which is equivalent to such election. (*Spencer v. World's Columbian Exposition,* 163 Ill. 117.) If he remains in possession beyond a reasonable time to make the election, he, by implication, elects to accept the lease and becomes bound, as receiver, under its terms, and the remedy of the landlord for rent may be sought against the estate of which he is receiver.''

In the *Link Belt Machinery Co.* case the lease was for the period from March 13, 1893, to April 30, 1895. On January 2, 1894, the Link Belt Machinery Company filed a creditor's bill to enforce the collection of a judgment against the lessee and asked for the appointment of a receiver. A receiver was appointed, who took possession of the leased premises January 2, 1894, and continued therein until January 24, 1895. He was directed by the court to carry on the business of the lessee and pay the rent. It was represented to the court that the lease was one of the valuable properties of the insolvent lessee. The receiver paid the rent under the lease for January, 1894, and thereafter the lessor filed his claim with the court for payment of rent under the lease, which claim was allowed. On the facts in this case the court held on page 160:

''There can be no denial of the proposition that a receiver has, subject to the order of the court, the right to elect whether he will perform or comply with

the provisions of the lease held by the party for whom he is acting, and that he is entitled to a reasonable time after taking possession in which to make the election whether he will continue such lease. (*Railroad Co. v. Humphreys*, 145 U. S. 82; *Park v. Railroad Co.*, 57 Fed. Rep. 799; *Railroad Co. v. Railroad Co.*, 58 id. 268; *United States Trust Co. v. Wabash Railway Co.*, 150 U. S. 287; *Central Trust Co. v. Wabash Railway Co.*, 34 Fed. Rep. 259; *Express Co. v. Railroad Co.*, 99 U. S. 191; *Ellis v. Railroad Co.*, 107 Mass. 1; *In re Metz*, 6 Ben. 571; *In re Hamburgher*, 12 Nat. Bank Reg. 277; *In re Lynch*, 7 Ben. 26; *Spencer v. World's Columbian Exposition*, 163 Ill. 117.) But in a case where the lease or contract is of itself a thing of value and the receiver, under the order of the court, takes possession of the premises and conducts the business which the insolvent had been unable to continue, and, without any act of disaffirmance or notice to the owner of the premises indicating that he would not be bound by the contract or terms of the lease, continues to hold the premises and conduct the business under the order of the court, receiving all the benefits of the possession of such premises, he has no right to repudiate the contract and pay rent for the premises only on the basis of *quantum meruit.*

"Where a receiver has continued the business of the insolvent for a reasonable time, paying to the owner of the premises the 'rent specified in the lease held by the insolvent, and has raised no question as to the terms or conditions of the lease, it will be considered as an adoption by him of the terms of the lease during the time he was occupying such premises, under the order of the court, for the continuance of the business of the insolvent.''

What is such reasonable time within which the receiver shall elect to accept or reject the lease must necessarily be determined by the facts and circumstances of the particular case. In the instant case the

receiver consistently and persistently refused to accept the lease and its obligations. It remains only to determine whether from all the facts and circumstances he can be held by implication to have accepted the lease and its obligations. Upon his appointment by the State auditor December 7, 1931, the receiver took possession of the assets of the Equitable Bank contained in the leased premises. His appointment was confirmed by the court December 22, 1931, and his possession of the assets was not for the purpose of conducting the business of the insolvent bank, but for the sole purpose of liquidating its affairs. December 22, 1931, the attorneys for the petitioners wrote the attorneys for the receiver requesting an answer to a previous letter, which asked for the payment of the instalment of rent due December 1, 1931, "in order to make a decision of whether or not we should exercise the right of the trustee to forfeit the leasehold interests of the Equitable Trust Company, in which event, all improvements would go to the trustee." In the same letter they "suggest that if time is necessary for you to work this matter out, a court order be obtained in the meantime to pay the trustee the installment of rent which matured on December 1, 1931."

The receiver testified at the master's hearing that at a conference with Pushman and his attorneys January 13, 1933, he told them "that it was impossible for me to adopt the terms of the lease, but inasmuch as I needed the space to carry on the liquidation of the bank and there was a movement under way to organize a new bank, I would be glad to remain in the present banking quarters in an effort to see if it were not possible to salvage anything for the depositors out of the amount invested in the building, as well as the banking fixtures. . . . It was my desire, if I could, to find a market for those banking fixtures and that furniture."

With reference to the same conference the receiver testified further as follows: "We told Mr. Pushman and Mr. Reinwald that it appeared as though there would not be any possibility of organizing a bank in that district at this time, and that we would be willing—that, inasmuch as we had to use the building, on account of people coming in there and filing their claims, we would continue our efforts temporarily in the organization of another bank. . . . The question, well, all along the line, in all the conferences with reference to that particular building, the whole point was the organization of another bank, in every conference that we had. . . . To lease the building . . . . Well, they agreed we were working in the best interests of all parties by endeavoring to go along in our efforts to get this group who were interested in the organization of a new bank to carry out such a program."

Referring to the same conference, the lessor, Pushman, testified: "That you did not want to say anything about the bank lease at that time because you were negotiating with some people to establish a new bank there. . . . We were glad to know there was a possibility of there being a new bank there. . . . I don't remember whether I expressed anything, but I certainly was glad to know and would be glad to know there was another bank coming there." He also testified that the idea of a possible new bank was conveyed to his mind at that conference.

The receiver found himself in possession of fixtures in which the Equitable Bank had invested $15,000 and the building owned by it that was carried on its books at a value of $75,000. The building was constructed for use as a banking office and it could not be rendered suitable for other business purposes without the expenditure of considerable money for alterations. He discovered that the Equitable Bank was lessee of the premises for an unexpired term of 77 years under the

terms of a lease which called for the payment of rent for that period of over $260,000, as well as the payment of taxes. The lease contained a provision for the forfeiture of the building and fixtures to the lessor upon 60 days' default in the payment of any rent instalment.

We think it was not only the right but that it was the duty of the receiver, before recommending to the court the acceptance or rejection of the lease, to explore the probabilities of the situation for the purpose of determining whether the lease was an asset or a liability of the receivership estate. He recognized his duty to secure a purchaser for the furniture, fixtures and the lessee's interest under the lease, if it were possible for him to do so. After all, he was simply the agent of the court with prescribed duties to perform, among which was the conservation and preservation of the assets of the insolvent bank, for the benefit of its depositors and creditors, under the sanction, guidance and direction of the court.

He was almost immediately harassed by petitioners for the payment of rent, under threat of forfeiture of the lease, which would entail the loss of the building and fixtures, without being afforded an opportunity to ascertain whether the building, fixtures and leasehold were in fact assets of the estate. Then the petitioners suggested to him, in effect, that if more time was necessary to determine the problems confronting him that he request permission of the court to pay the rent pending his decision to accept or reject the lease. This suggestion, we think, in legal effect carried with it the lessor's consent and approval to the occupancy of the premises by the receiver pending his decision to adopt or disaffirm the lease within a reasonable time.

The record discloses that, in the meantime, with the apparent approval of petitioners, the receiver was negotiating with business men of the neighborhood to organize a new bank, which would purchase the build-

ing, fixtures and furniture from the receiver and assume the obligations of the lease. It appeared, for a time, that the negotiations would culminate successfully, until a succession of bank failures during May and June, 1932, brought the negotiations to an abrupt termination.

The receiver asked the court's approval to pay two instalments of rent to prevent the forfeiture of the lease, pending his determination of the value, if any, of the leasehold and his attempt to conserve all possible assets of the receivership estate, with the express understanding that such payments would not constitute an acceptance of same, and the court ordered the payments on that understanding.

On July 13, 1932, after the negotiations for the organization of a new bank to occupy the premises had fallen through because of additional bank failures, and when it was definitely determined that the lease was a liability to rather than an asset of the estate, the receiver asked leave of court to reject the lease. Pending the hearing on this petition to reject and the answer thereto, the receiver continued to occupy the premises. October 15, 1932, the chancellor ordered him to move to another office, which he did, and the keys to the premises were delivered to one of the petitioners November 9, 1932, after all the furniture of the insolvent bank had been removed from the premises.

The receiver could not accept the obligations of the lease without the approval of the court, and it is not contended that he expressly adopted it. It is, however, strenuously urged that, under the doctrine enunciated in the *DeWolf* and *Link Belt Machinery Co.* cases, *supra,* he must be held to have accepted the lease by implication.

We find no merit in this contention and are of the opinion that the findings of the master and the chancellor that the receiver could not be held to have ac-

cepted the lease were entirely justified by the facts and circumstances disclosed by the record. The receiver was in a difficult position and, in our opinion, it cannot be said that he acted unreasonably or delayed an unreasonable length of time in reaching his decision to reject the lease and asking the court's judgment on same.

The court ordered the receiver to pay the rent specified in the lease for the period of his occupancy. There was evidence that the reasonable value of the premises approximated the rent specified in the lease. It is insisted that, in any event, the receiver should be ordered to pay the taxes assessed against the property during the period of his occupancy, as well as the rent provided under the terms of the lease.

We are unable to agree with this contention. The authorities generally recognize the rule that, if the receiver elects to reject the lease within a reasonable length of time he can only be held liable for the reasonable rental value of the premises during the time of his occupancy.

In *Fisher v. Columbia Nat. Bank,* 54 Ind. App. 558, 103 N. E. 119, 121, the court said:

"The receiver had a right to conduct the business during a reasonable period in order to ascertain whether it would be profitable to the insolvent estate to retain the lease. During the time of his occupancy he would be liable for the reasonable rental value of the premises for that period. The fact that he paid rent according to the terms of the lease may be taken as an indication that he believed the premises to be reasonably worth the agreed amount, and not as an indication to elect to adopt the lease for its entire term."

In *Bell v. American Protective League,* 163 Mass. 558, 28 L. R. A., 452, at page 455, the court said:

"We regard the question presented in the case at bar as an open one in this commonwealth; and, on

principle, it seems to us that, if a receiver of an insolvent corporation takes possession of its leasehold estate, he is liable only for a reasonable rent during the time that he retains possession; that he does not become an assignee of the term, and is not liable on the covenants of the lease. As the receiver paid the rent to the satisfaction of the lessor while in possession, we are of opinion that he is not liable for any further rent.''

In our opinion it would be a perversion of justice to impose on this receivership the burden of carrying the obligation of this lease for its unexpired term of 77 years.

For the reasons indicated herein the order of the circuit court approving and confirming the election by the receiver to reject the lease was properly entered and should be and is affirmed.

*Affirmed.*

GRIDLEY, P. J., and SCANLAN, J., concur.